THE STATE *vs.* JOHN GRADY AND OTHERS.

Where an offence is committed against a statute, and afterwards and before conviction and final sentence the statute is repealed, all proceedings under it, which were not passed and closed, are thereby arrested, as if the statute had never existed.

Where a statute provided for the punishment of larceny by imprisonment in a common jail where the value of the property stolen should not exceed fifty dollars, and for imprisonment in the state's prison for a term not exceeding five years where the value of the property stolen should exceed fifty dollars, and a subsequent statute provided that if the value of the property stolen should exceed the sum of fifty dollars and should not exceed the sum of two thousand dollars the punishment should be imprisonment in the state's prison for a term not exceeding five years, and if the value of the property stolen should exceed the sum of two thousand dollars imprisonment in the state's prison for a term not exceeding twenty years, and the later statute further provided for a repeal of all acts and parts of acts inconsistent therewith; it was held, that as to so much of the prior statute as provided a punishment where the property did not exceed the value of two thousand dollars the statutes were identical in character and effect, that there was therefore no inconsistency, and that so much of the prior one was not repealed.

The courts of this state will take no cognizance of an offence committed in another state; but will take cognizance of an offence committed in this state by the procuration of a resident of another state, who does not personally come here to commit the offence, whether committed by a guilty agent or not, and whether a misdemeanor or felony. The doctrine that a resident of one state who procures a felony to be committed in another state, by a guilty agent, without being personally present to assist in the commission of the offence, cannot be punished in the state where the offence is committed, has never been recognized by our courts, is inconsistent with our system of jurisprudence, does not rest on any just foundation, tends to encourage the commission of crime, and should be repudiated generally.

State *v.* Grady.

Where several residents of another state combined to perpetrate a larceny in this state, and to carry the property into such other state to be there divided and appropriated, it was held that the acts and declarations of such of the conspirators as came into this state to perpetrate the offence, after they had taken the property from the custody of the owners and while they were secreting and attempting to remove it out of the state, pursuant to the original object and purpose of the conspiracy, were admissible against all the conspirators.

INFORMATION for theft, tried to the jury in the superior court in Fairfield county, on the plea of not guilty, before *Loomis, J.* The information contained three counts, all describing the same property, one of which alleged it to be the property of Clapp Spooner, and the others of the Adams Express Company, a corporation.

Upon the trial the state offered evidence to prove, and claimed to have proved, that on the 6th day of January, 1866, the prisoners conspired in the city of New York with certain accomplices named Clark, Tristram, McGuire, and Hudson, to commit the crime charged, and for that purpose agreed to meet them on the night of that day at 42d street in that city, and there break open the iron car of the Adams Express Company, attached to the 8 o'clock evening train of the New York and New Haven railroad from the city, and that Clark, McGuire and the prisoner Grady should there enter the iron car and shut themselves in, and the other five conspirators should enter the passenger cars of the train ostensibly as passengers, but for the real purpose of assisting the other conspirators in the iron car in the perpetration of the crime charged; for which purpose Clark, Grady and McGuire at some place between New York city and Coscob Bridge, in Greenwich, in the state of Connecticut, should break open the safes of the company in the iron car, and steal their contents, among which were the watch and the gold certificates mentioned in the information, and put them into carpet bags provided by the conspirators in New York for that purpose, and that they should get off the car with the bags and stolen property at Coscob Bridge and return to New York and rejoin the conspirators and divide the stolen property there among them all. The state claimed further to have proved that in

pursuance of the conspiracy the prisoners and all the other conspirators did, on the night of the 6th of January, 1866, at New York, break open the iron car, and that Clark, Grady and McGuire entered the same with the carpet bags as agreed, and that the other five conspirators entered the passenger cars of the same train for the purpose of carrying out the conspiracy and perpetrating the crime charged; and that Wells, Allen, McGloyn, Hudson and Tristram got off at Harlem Bridge, in the state of New York, in expectation of being joined by the other conspirators with the stolen property, and that Clark, Grady, and McGuire, at some place between Harlem Bridge and Coscob Bridge, broke open the safes, and at Coscob Bridge feloniously took their contents, including the watch and gold certificates, in their carpet bags from the iron car, and secreted the same near Coscob Bridge till they could get opportunity to send the same to New York to the other conspirators, and that they did so send the same to the dwelling house of Tristram's sister, in NewYork city, on the 9th day of January, 1866, where, on the same day, and before the conspirators could divide the same, the stolen property was seized by the Adams Express Company.

The acts and accompanying declarations of Clark, Tristram, and McGuire, during the course of the execution of the conspiracy, and while engaged in the transmission of the stolen property to New York to be divided, and not in the presence of the prisoners, were offered in evidence by the state against all the prisoners, after proof of the conspiracy had been introduced. The prisoners objected to all evidence consisting of such declarations made in the absence of the prisoners, after the actual leaving of the iron car by Clark, Grady and McGuire, but the court admitted the evidence.

In the course of the trial it was conceded by the state that other property than that mentioned in the information, and of a value exceeding two thousand dollars, was taken from the car in the carpet bags at the same time that the property charged in the information was taken, and belonged to the same owner or owners. And the prisoners claimed that a fatal variance was thus established between the proof and the

allegations in the information, and requested the court so to charge the jury. The court did not so charge the jury, but instructed them that the fact thus conceded did not establish a fatal variance between the proof and the information.

The state offered evidence to prove, and claimed to have proved, that the prisoner Grady was actually present, and personally engaged in the commission of the crime in this state, and that the prisoner Allen came into and was in the state of Connecticut, on Monday morning next after the Saturday night upon which the property was stolen, for the purpose of assisting in the removal of the stolen goods to New York, but it was conceded by the state that the prisoners Wells and McGloyn did not personally come into the state of Connecticut, and participated in the crime charged in the information only in the manner hereinbefore stated. The prisoner Allen claimed that he was not in the state of Connecticut at all during the execution of the conspiracy. And the prisoners Allen, Wells and McGloyn, thereupon prayed the Court to charge the jury that if the prisoners, or either of them, did in the city of New York conspire with the other conspirators to commit the crime, and did in the city of New York aid and act with them in making the necessary preparations for the commission of the offense in the state of Connecticut, as claimed by the state, still, such of the prisoners as were personally absent from the state of Connecticut could not be convicted, because in such case they would not be amenable to the laws of the state of Connecticut. The court did not so charge the jury, but did instruct them *pro forma*, that the mere fact that the prisoners, or either of them, were not shown to have been personally present in the state at the time of the commission of the offense, did not entitle them to an acquittal, and that if the jury should find that the prisoners did actually conspire in the state of New York with the other conspirators for the commission of the crime in this state in the manner claimed by the state, and did the other acts in the state of New York, in pursuance of the conspiracy, as claimed by the state, and the crime was actually so committed in this state by the rest of the confederates in pur-

suance of the conspiracy, as claimed by the state, then the prisoners were amenable to the laws of this state and might be lawfully convicted upon the present information, though they did not actually enter the state of Connecticut in pursuance of the conspiracy.

The jury returned a general verdict of guilty, and the prisoners moved for a new trial.

They also filed a motion in error, assigning the following errors:—1. That at the time of the conviction, the statute under which the defendants were convicted, had in effect been previously repealed by the statute approved June 30, 1866, and was not, at the time of the conviction, in existence—it being conceded that the offense charged in the information, if committed at all, was committed on the 6th day of January, 1866. 2. That the information contained several distinct counts, charging distinct offenses, and alleging the ownership of the property to be in different parties, and the evidence showed but one offense to have been committed; and yet the verdict of the jury was a general verdict of guilty as to all the counts in the information, and as to all the defendants named therein.

*S. H. Stuart* of New York, with whom was *Taylor*, in support of the motions.

1. So much of the statute existing at the time of the perpetration of this crime as declared the penalty of the offense, had been repealed when these prisoners were tried. Gen. Statutes, p. 254, sec. 59 ; Acts of 1866, p. 66. A theft of any sum exceeding $50, was punishable by the old law by not more than five years imprisonment; but the new law revises so much of the old as relates to punishment, and provides that for all sums exceeding $2,000 it may be twenty years, repealing so much of the former act as limited the penalty for stealing all sums over $50 to five years. The old statute being repealed and the new one being *ex post facto* by reason of an increased punishment, there was no law denouncing a penalty against offenders who had previously stolen over $2,000. It is true that after these prisoners had been arraigned and

pleaded not guilty to an information charging them with stealing over $200,000, a new information was filed charging them with stealing less than $2,000, and they tried upon it; but the same record that exhibits that information also shows that in truth a greater amount than $2,000 was in fact stolen by them. Now the statute is not concerned about the amount less than the true amount which a state attorney may choose to specify in his information, but really and truly about the amount actually stolen by the thief; and therefore the device of reducing the amount from $200,000 to less than $2,000, to escape the effect of the new law, cannot deprive these prisoners of any legal right which they at any time before had derived from it. And now did they at any time before derive any right under this law? The record shows that on the 6th of January, 1866, these prisoners in point of fact stole over $2,000, for which they were then liable, under an existing law, to a punishment of five years; that in July following the penalty portion of that law was repealed by a new act, increasing the punishment for that offense to twenty years. On the day then upon which this new penalty came into existence the old one went out; and as the new one could have no retrospective operation these prisoners could not be punished for the crime they had committed. Now, if this has ever been true of the accused, and the record and the law show it was, they cannot be deprived of this benefit by any means whatever. *Shepherd* v. *The People*, 25 N. York, 406; *State* v. *Daley*, 29 Conn., 272. Again, granting that these prisoners stole only the amount specified in the information, still, even upon this state of facts, so much of the old law as punished with five years a theft of any and all sums over the last named amount is repealed by the new act. That provision of law in the old statute was a unit and indivisible. It is not now the same law that it was before the recent act was passed. It is not now a law that punishes theft of all sums over $50 with five years. There is now no such law as that upon the statute book. An answer to a simple inquiry must present this question in a clear light and conclude all controversy. Are two provisions of law—one declaring that

every person who steals over $50 may be punished by five years, and the other that every person who steals over $2,000 may be punished by twenty years, consistent with each other? Of course they are not, as all must admit, and if not then the repealing clause of the last law obtains and repeals the former. "All acts and parts of acts inconsistent with this act are hereby repealed." It is not here a question how much or how little these prisoners stole. That question does not affect the legal consideration of the proposition submitted. If these two provisions of law are consistent, well; if not, the former is expressly repealed, no matter what the effect of that repeal is, whether to the benefit or prejudice of these prisoners. The question still is, are these two provisions of law perfectly consistent with each other. It is most plain and manifest that they are not. Can both exist at once upon the statute book? Clearly not. I do not say there is no law to punish the stealing of any sum between $50 and $2,000. There is such a law, clear, definite and certain, about which there can be no dispute. But what I contend is, that this law as contradistinguished from that former law which punished all sums over $50 with only five years, came into existence when the act of July, 1866, was passed, and as to these prisoners is *ex post facto*, but valid and operative as to offenses committed since that time. If this inquiry was whether the old provision was repealed by implication in the enactment of the new, it would even then afford but little ground for dispute, but when it is expressly repealed by an arbitrary repealing statute, it is submitted there is none. Smith's Com. on Const. and Stat. Construction, §§ 775, 776, 777; *Commonwealth* v. *Kimball*, 21 Pick., 375; *Hale* v. *The State*, 15 Conn., 242.

2. The court had no jurisdiction to try the prisoners Allen, McGloyn and Wells, they not having committed any offense within this state. It is conceded, as the record shows, that neither Wells nor McGloyn was at any time personally within this state in connection with this felony; and the same was claimed for Allen; and counsel prayed the court to charge the jury that if they believed these three prisoners were not

personally in this state at the time of the commission of this felony they ought to acquit them. The court refused so to charge, but charged that they might be convicted although not within the state. It is a fundamental rule of law that no state has jurisdiction of felonies committed outside of its territorial limits; and the only exception to this rule (if indeed it be an exception) is where one out of the state procures an offense to be committed within the state, by means of an innocent, irresponsible or inanimate agent. In such case only the person procuring the offense to be committed is liable, where the crime is effected, as a principal, and the reason is, that besides him there is from necessity no principal, and no one to answer the offended law of the place. But where a person in one state procures a felony to be committed in another, by a criminal agent, or, as in this case, conspires with others for the commission of a felony in another state, and those only with whom he conspires go over into that other state and commit the offense, they alone are guilty as principals at the place where the crime is perpetrated, and he is an accessory before the fact in the state in which the conspiracy to commit the felony was formed, and is triable only as an accessory, and alone within that jurisdiction. 1 Bishop Crim. Law, §§ 576, 577, 578; id. §§ 456, 457, 458; *State* v. *Moore*, 6 Fost., 448; *People* v. *Adams*, 3 Denio, 190; *People* v. *Rathbun*, 21 Wend., 509; *Rex* v. *Easterby*, Russ. & Ryan, 37; 1 Stark. Crim. Pl., 5; Wheaton's Internat. Law, 252; Wharton's Crim. Law, §§ 124, 125, 126. Indeed, previous to the statute of 2 and 3 Edward IV., an accessory could not be tried in either jurisdiction; but that statute, since the American revolution, has been a part of the common law in this country; besides, the legislators of nearly all the states have provided for the punishment of an accessory before the fact to a felony, at the place where his offense of accessory is committed. There is such a statute in New York, (2 Rev. Stat., p. 727, sec. 45,) where these prisoners ought to have been and may yet be tried for the offense they actually did commit. 1 Bishop Crim. Law, §§ 561, 578; *State* v. *Moore*, 6 Foster, 448; *Baron* v. *People*, 1 Parker

Crim. R., 246. This state can take no cognizance of an offense committed in another state. *Gilbert v. Steadman,* 1 Root, 403. The misapprehension of the law upon this subject has arisen from the fact that in misdemeanors, where there are no accessories but all are principals, this rule does not apply. 1 Bishop Crim. Law, § 561. The cases often cited in support of a contrary doctrine to that I have submitted are cases of misdemeanor. The case of *Commonwealth* v. *Gillespie,* 7 Serg. & R., 469, was a misdemeanor. The case of the *King* v. *Johnson,* 7 East, 65, was a libel. The case of *Barkhamsted* v. *Parsons,* 3 Conn., 1, was an action on the part of the state to recover a penalty. That a larceny is a felony at common law, will not be disputed. Wharton's Crim. Law, § 2. One cannot be both principal and accessory in the same case, and an accessory before the fact is one who being personally absent, procures, counsels, advises, incites or commands a felony to be committed. 2 East P. C., 641 ; 2 Hawk. P. C., 33 ; *People* v. *Norton,* 8 Cowen, 137 ; Wharton's Crim. Law, § 112.

3. The court permitted evidence to be given of the declarations of Clark, McGuire and Tristram, in the absence of the prisoners after the offense had been consummated, namely, during the Monday and Tuesday next after the Saturday upon which they had stolen the property from the express car at Coscob Bridge, and while they had it in their sole possession at Norwalk. The rule of law is, that during the existence of a conspiracy for the commission of an offense, and up to the moment the crime is consummated, the acts and declarations of any one conspirator may be given in evidence against the rest, but that after the accomplishment of the object for which the conspiracy was formed, nothing that any co-offender may say in the absence of the others can be given against them on their trial. It is no part of the *res gesta* and therefore not testimony. It is evidence given under oath indeed by the witness who relates it, but he swears simply to declarations by others, made by them not under oath, and so for either reason ought not to be heard in a court of justice. The admission of this evidence, we contend, was clearly erro-

State *v.* Grady.

neous. 1 Greenl. Ev., §§ 108, and note, 109, 110, 111; *Enos*
v. *Tuttle,* 3 Conn., 250 ; *Noyes* v. *Ward,* 19 id., 250.

*Beardsley,* contra.

1. The acts and accompanying declarations of Clark, Tris-
tram and McGuire during the progress of the conspiracy, and
in furtherance of its objects, were properly received against
the prisoners. 1 Greenl. Ev., § 111.

2. There is no variance between the allegations and proof
upon the ground that it appeared that other property besides
that specified in the information was stolen by the prison-
ers at the same time. 1 Bishop Crim. Law, §§ 536, 580,
691 ; *State* v. *Fielding,* 32 Maine, 258 ; *State* v. *Shepard,*
7 Conn., 54.

3. The fact that there were several counts in the informa-
tion, charging the ownership of the stolen property in differ-
ent ways, and that a general verdict of guilty was rendered,
does not vitiate the verdict. Such an information would be
good even if all the counts but one were bad. *State* v. *Smith,*
5 Day, 175. It does not appear by the case that distinct
offenses were not proved under each count.

4. The old statute was not repealed by the act of 1866, ex-
cept in relation to larcenies of more than $2000 in value.
Gen. Statutes, p. 254, § 59 ; Acts of 1866, p. 66 ; 1 Bishop
Crim. Law, §§ 75, 76, 78, 80 ; *Nichols* v. *Squire,* 5 Pick., 168 ;
*Commonwealth* v. *Kimball,* 21 id., 373 ; *Elrod* v. *Gilliland,*
27 Geo., 467 ; *Robbins* v. *The State,* 8 Ohio, N. S., 131 ;
*Erwin* v. *Moore,* 15 Geo., 361 ; *George* v. *Skeates,* 19 Ala.,
738.

5. The fact that Allen, Wells and McGloyn were not person-
ally present at the time of the commission of the offense, did
not entitle them to an acquittal. By the law of this state they
were all principals in the crime. *Barkhamsted* v. *Parsons,*
3 Conn., 1. But if not, their conviction was proper. 1 Bish-
op Crim. Law, §§ 577, 578 ; *Rex* v. *Johnson,* 7 East, 65 ;
*Adams* v. *The People,* 1 Comst., 173 ; *Barkhamsted* v. *Par-
sons,* supra.

BUTLER, J. We discover no error in this record, either in the assignment of errors or the motion for a new trial.

The first point made is that so much of tte existing at the time of the perpetration of this crimeclared the penalty of the offense, had been repealed when these prisoners were tried, and therefore that there was no statute under which they could be punished.

It is unquestionably true that if an offense is committed against a statute, and afterwards and before sentence the statute is repealed, any proceedings under it which were not passed and closed are arrested, as if the statute had never existed. This was settled upon full consideration in the case of *The State* v. *Daley*, 29 Conn., 275. If then the statute against which the offense in question was committed was repealed by the act of 1866, as claimed, it would be our duty to advise an arrest of the judgment.

But we do not understand the fact to be so. The statute which existed at the time when the offense was committed, provided for the punishment by imprisonment in a common jail in all cases of larceny where the value of the property did not exceed the sum of $50, and punishment by imprisonment in the Connecticut state prison for a term not exceeding five years in all cases where the value of the property stolen should exceed the sum of $50. The essential elements of that statute then were a graduation of the punishment by imprisonment in all cases of theft (not from the person,) according to the value of the property stolen. The act of 1866 repeals so much of that statute as is inconsistent with it, and leaves so much as is not inconsistent in full force. What inconsistency then is there between the two statutes ? They are different, undoubtedly ; but it is not a question of difference, it is one of inconsistency.

If then we compare the two statutes, we find they both relate to every description of theft except that from the person, and in their description of the offense are identical. We find too that they both graduate the punishment by imprisonment according to the value of the property stolen; and the latter statute introduces a new degree of punishment where the property

State v. Grady.

stolen exceeds the sum of $2,000. The whole purpose, object and effect is to provide an additional degree of punishment where the value of the property exceeds $2,000. There is no inconsistency then in any other respect than in the degree of punishment where the property stolen exceeds $2,000. In the old statute the punishment, where the property stolen did not exceed the sum of $50, was punishment by imprisonment in a common jail; and the new statute leaves that part undisturbed. The old statute provided the punishment by imprisonment in the Connecticut state prison in all cases where the value of the property stolen exceeded the sum of $50. The new statute adds the punishment by a new term in the Connecticut state prison not exceeding twenty years, where the property stolen exceeds the value of $2,000. The punishment inflicted by the two statutes where the property stolen is less than the sum of $2,000 is precisely the same in nature and degree and there can be no pretense of inconsistency between them. In that respect then, that is to say in respect to the punishment to be inflicted in case the value of the property should exceed $2,000, the two statutes are inconsistent, and in no other respect. And so far forth as the old statute limited the punishment to a term not exceeding five years where the property exceeded the value of $2,000, it is repealed, and no farther. We think it entirely clear that this point was not well taken.

The second point made is, that the court below have no jurisdiction to try the prisoners Allen, McGloyn and Wells, because, although they conspired with Clark and Grady and Tristram to commit the offense, and assisted in the initiation of it in New York, they did not come into this state, and did not assist personally in its attempted completion here.

It is undoubtedly true, as claimed, that the courts of this state can take no cognizance of an offense *committed* in another state. Such was the decision in *Gilbert* v. *Steadman*, 1 Root, 403. But it is true, and universally conceded, that if an offense is *committed* in this state by the procuration of a resident of another state who does not himself personally come here to assist in the offense, of a grade below felony,

such non-resident offender can be punished for the offense by our courts if jurisdiction can be obtained of his person. It is said, however, that if the offense is of the grade of felony no such punishment can be inflicted. As it is more important to protect our citizens against great crimes than small ones, unless such a distinction not only exists but is founded in justice and essential to the symmetry of the law, it should be discarded. Such a rule cannot be founded in justice. The general proposition that no man is to suffer criminally for what he *does* out of the territorial limits of the country, if applied to a case where the act is completed out of the country is correct ; but it is the highest injustice that a man should be protected in doing a criminal act here because he is personally out of the state. His *act* is here, although he is not. The injustice of the rule has compelled courts of other states to disregard it in cases of great crimes. Thus if a man, standing beyond the outer line of one state, discharges a ball over the line and kills another, it has been holden that he was punishable, though the crime was a felony. The reason given for the distinction is, that if the offense is a felony, he sustains the relation to it, if performed by a guilty agent who can be punished, of an accessory and not of a principal, and that, as technically an accessory, he must be pursued in the locality where he committed the enticement. The doctrine has never been recognized in this state, is inconsistent with our system of criminal law, and does not commend itself to our judgment. In the first place it has not been recognized here. There has been no case in our courts where the prisoner has been indicted, and acquitted because, although a party to the offense, he was not in the state at the time it was committed. On the other hand, in *Barkhamsted* v. *Parsons,* (3 Conn., 1,) an inhabitant of Massachusetts was holden punishable here for an act done by his agent; and Chief Justice Hosmer said : " The principle of common law, *qui facit per alium facit per se,* is of universal application, both in criminal and civil cases ; and he who does an act in this state by his agent, is considered as if he had done it in his own proper person." It is true the offense in that case was not

a felony; but the learned Chief Justice must have been aware of the distinction claimed, and apparently repudiated it.

In the second place, the doctrine is inconsistent with our system of criminal law. By express statutory provision we have done away with the distinction between principal and accessory in felony; and every person who aids and assists in the commission of a crime, or the protection of a criminal, is made a principal, and punishable and indictable as such. No man therefore can be accessory to a felony which has been committed here, and the doctrine is entirely inapplicable. He is a principal or nothing.

And in the third place, the doctrine as applicable to this country is vicious and should be repudiated. It originated, as Mr. Bishop tells us, in the blunder of some judge, who held that inasmuch as one who attempted to incite another to do an act could only be punished in the county where the attempt was made, therefore one who incited an act which was actually committed in another county could be punished for the incitement and as an accessory only in the county where the act of incitement was committed. The blunder was corrected by the statute of Edward VI., Chap. 24, § 4, which provided that such accessory might also be indicted in the county where the offense was committed. It would seem that a rule thus originating in a blunder, and applicable only in respect to counties, in the state where the offense is committed, and corrected by express statute, and favoring the commission of crime, ought not to be adopted and applied to states situated as these are, tied together by a ligament giving to the citizens of each citizenship in all. For these reasons we are satisfied that the second objection ought not to prevail.

The third objection arises upon the motion for a new trial, and is that the court permitted evidence to be given of the declarations and statements of Clark, Grady and Tristram, to and with others, in the absence of these prisoners, after the offense had been consummated, and during the Monday and Tuesday next after the Saturday upon which they had stolen

the property from the express car at Coscob Bridge, and had it in their sole possession at Norwalk.

The objection is not that the evidence was admitted without sufficient proof of the conspiracy, but that the acts and declarations admitted were made after the offense was consummated by the removal of the property from the car. But was the object and purpose of the conspiracy consummated and completed immediately upon such removal of the property from the car? Clearly not. The object and purpose of the conspiracy was not to remove the property from the car simply, or to enable Clark, Tristram and Grady to steal it for their own benefit, but to transport it to New York as the joint property of all, to be there divided ; and until such transportation was completed, and division made, the object and purpose of the conspiracy was not completed, and Clark, Grady and Tristram were still the agents of the prisoners.

The other points raised upon the motion were not insisted upon in the argument, and therefore were not considered.

A new trial should be denied.

In this opinion the other judges concurred.