## BUNK AUSTIN v. THE STATE.

### No. 442.   Decided March 15, 1911.

**1.—Permitting Gambling—Repeal of Law—Statutes Construed.**

The Act of the Thirty-first Legislature, page 111, defining and punishing vagrancy does not repeal article 388, Penal Code, as amended by the Act of the Thirtieth Legislature, page 107, defining the offense of knowingly permitting property and premises under the control of the accused to be used as a place for gambling, etc., nor does it repeal any other part of said gambling Act passed by the Thirtieth Legislature.   Davidson, Presiding Judge, dissenting.

**2.—Same—Repeal by Implication.**

A repeal by implication only extends to Acts on the same subject and to the parts of such Acts which are clearly inconsistent and irreconcilable with the provisions of the later Act.

**3.—Same—Sufficiency of the Evidence—Keeper of Gambling House.**

Upon trial of knowingly permitting property and premises under his con-

trol to be used as a place to bet and wager and to gamble with cards or dice, where the evidence showed that the defendant rented a dwelling house for himself and his family and they lived in it, and that he permitted people to gamble there and gambled with them, and made his residence a common resort for gaming, but that he charged no fees or superintended the gambling, the conviction was sustained, and he was not a keeper of a gambling house. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Morris. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of knowingly permitting property under his control to be used as a place for gaming; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case the appellant was indicted, charged with the offense of unlawfully and knowingly permitting property and premises then and there situated, and then and there under the control of him, the said Bunk Austin, to be used as a place to bet and wager and gamble with cards, dice and dominoes. Upon a trial appellant was convicted and sentenced to two years confinement in the penitentiary.

The judge in his charge to the jury limited the issues to whether or not appellant rented a house and premises, and took actual possession and control of same, and while under his control knowingly permitted said house to be used as a place to bet and wager, and to gamble on games played with dice or cards.

The only assignment of error is that the verdict of the jury is contrary to the law and evidence, and under this assignment the contention is made that the Act of the Thirty-first Legislature, page 111, entitled "An Act to better define and punish vagrancy, prescribing the rules of procedure in the prosecution of vagrancy and fixing a punishment for vagrancy and repealing all laws and parts of laws in conflict herewith and declaring an emergency," in which said Act, in subdivision (K) of sec. 1, every keeper of a house of gambling or gaming is defined as a vagrant, repeals in part at least, if not wholly, the Act of the Thirtieth Legislature, page 107, entitled "An Act to amend article 388 of the Penal Code of the State of Texas, so as to make it unlawful to bet or wager at any gaming table or bank or pigeon-hole or jenny-lind table, or nine or tenpin alley such as are mentioned in the six preceding articles, or to bet or wager any money or other thing of value at any of the following games, viz.: Poker-dice, jack-pot, high-dice, high-die, low-dice, low-die, dominoes, eucher with dominoes, poker with dominoes, sett with dominoes, muggins, crack-loo, crack-or-loo, or at any game of any character whatever that

can be played with dice or dominoes, or at any table, bank or alley, by whatsoever name the same may be known or whether named, or not, or matching for money or anything of value; also, by adding to said Code, articles 388a, 388b, 388c, 388d, 388e, 388f, 388g, 388h, 388i, 388j, 388k, 388l, 388m, and 388n, making it a felony punishable by confinement in the penitentiary for any person directly, through an agent, or as agent for another, to keep any house or place to gamble with cards, dice, dominoes or upon anything whatever, or where people resort for such purpose or to exhibit for the purpose of gaming, any table, bank, alley, machine or device whatsoever; or to rent or keep any such place, table, bank, alley, machine or device whatsoever for the purpose of gaming; providing for the search for, and the seizure of any gambling device, equipment or paraphernalia and its destruction; and generally to suppress gambling; repealing all laws in conflict herewith, and declaring an emergency," in which said Act there is adopted article 388b, as follows:

"If any person shall rent to another or shall keep or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice, dominoes or to keep or exhibit for the purpose of gaming any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever or shall knowingly permit property or premises of which he is owner, or which is under his control to be so used, shall be guilty of a felony, and upon conviction shall be punished by confinement in the penitentiary not less than two nor more than four years, regardless of whether any of the above mentioned games, tables, banks, alleys, machines, wheels or devices, or things are licensed by law or not, and any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any fees, money, or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

It will be noticed that appellant was tried and convicted of the offense of "knowingly permitting property and premises under his control to be used as a place to bet and wager, and to gamble with cards or dice."

The clause under the vagrancy Act does not repeal this part of the Act of the Thirtieth Legislature, even if it should be held that it repeals any part thereof, a discussion of which is pretermitted at this time, as it is not necessary, nor involved in a disposition of this case. However, we might say at this time that we do not agree that the Act defining vagrancy repeals any part of the Act of the Thirtieth Legislature, and will when the question arises in a proper case present our views. There is no provision in the Act of the Thirty-first Legislature relating to vagrancy that refers to the offence of permitting a house under one's control to be used as a gambling house. In the case of Jesse v. De Shong, 105 S. W. Rep., 1011, the court says:

"To constitute a repeal by implication, there must be such repugnance or conflict between the positive and material provisions of the different Acts that they can not stand together (citing Hunter v. City of Memphis, 93 Tenn., 571.) Further, a repeal by implication must be by necessary implication. 'It is not sufficient to establish that the subsequent law covers some or even all of the cases provided for; for they may be merely affirmative or cumulative or auxiliary; but there must be a positive repugnance between the provisions of the new law and those of the old law, and even then the old law is repealed by implication only pro tanto to the extent of the repugnance'" (citing Words & Phrases, 6103; Hornaday v. State, 63 Kan., 499; Gilbert v. Craddock, 67 Kan., 346).

In discussing this question the United States Supreme Court, in the case of Daviess v. Fairbairn, 3 How., 636, says: "As having a strong and decided bearing on this view we refer to Wood v. United States (16 Pet., 342.) In that case the court says: 'The question then arises whether the 66th section of the Act of 1879, ch. 128, has been repealed or whether it remains in full force. That it has not been expressly, or by direct terms repealed, is admitted; and the question resolves itself into a more narrow inquiry, whether it has been repealed by necessary implication. We say necessary, for it is not sufficient to establish that subsequent laws cover some or even all the cases provided for by it, for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnance between the provisions of the new laws and those of the old; and even then the old law is repealed by implication anly pro tanto to the extent of the repugnance.'"

Repeal by implication extends only to Acts on the same subject and to the parts of such Acts which are clearly inconsistent and irreconcilably conflicting with the provisions of the later Act, and only to the extent of the conflicting provisions. People v. Durick, 20 Cal., 94; State v. Grady, 34 Conn., 118; Elrod v. Gilliland, 27 Ga., 467; Cyc., vol. 26, p. 719; Geisinger v. Beyl, 44 Wis., 258.

In McLain's Criminal Law, the author says: "Thus it is made an offense to keep a place for the illegal sale of intoxicating liquors, and declare the place or building where the liquor is sold or kept with the intent to sell a nuisance, and the offense of keeping such a place is distinct from that of illegally selling or illegally keeping for sale." (See sec. 1248 and authorities there cited.)

We could cite numerous other authorities, but deem it unnecessary. There being no repugnancy in any part of the vagrant Act to that part of the Act of the Thirtieth Legislature under which appellant was convicted, we hold it did not repeal that provision of the Act of 1907, and as hereinbefore stated, we do not wish to be understood as agreeing that said Act repeals any part of the Act of the Thirtieth Legislature, but our holding is that it does not do so, and we will present our views in a case pending before the court in which the

question is presented. The Act of the Thirty-first Legislature, defining vagrancy, has the following proviso: "Provided the penalties herein named shall be cumulative and a conviction for any of the offenses herein named shall not be a bar to any other prosecution under any other criminal statute." One Act has for its object the suppression of gambling, while the other has for its purpose the suppression of vagrancy.

The facts in the case show that appellant rented a dwelling-house for himself and his family, and they lived in it. He permitted many people to come there and gamble, and gambled with them. In fact, his residence was commonly resorted to for gaming and betting. The evidence does not show that he charged any fees, or that he superintended the gaming. When he played it was as one of the other persons engaged in the game. He had no paraphernalia such as is usually incident to a gambling-house. There was no "take-off," and the gaming took place in the rooms in which the family lived, and he permitted his friends and others to meet there for the purpose of gambling. This, as we understand it, did not constitute him the "keeper of a gambling-house," but one who knowingly permitted premises under his control to be used as a place to which people resorted for the purpose of gambling, and this was the offense for which he was placed on trial and convicted.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge (dissenting).—My brethren have written an opinion affirming the judgment herein. I can not concur.

1. Appellant was indicted under the Act of the Thirtieth Legislature, page 107, for unlawfully and knowingly permitting property and premises under his control to be used as a place to bet, wager and gamble with cards, dice and dominoes, and was then and there interested in keeping and did then and there keep the said premises and the building thereon, situated in Daingerfield, Morris County, for the purpose of being used as a place where people resort and where people did then and there resort to gamble, bet and wager; and people did then and there resort to said place and gamble with cards, dice and dominoes with the knowledge and consent of said Bunk Austin, who was then and there in control of said building and premises.

The court submitted only that clause of the indictment which charged appellant with knowingly permitting his premises and his house while under his control to be used as a place to bet, wager or gamble on games played therein with dice or cards. Appellant's motion for new trial is based upon two propositions that are necessary to be discussed, first, the verdict of the jury and judgment of the court are contrary to the evidence. The evidence shows that

appellant had rented the house in question and lived in it as his private residence. It is shown by the State's testimony beyond any question that this house had been occupied by appellant as his private residence something like six months; that he rented it from Dr. Jenkins; that gambling had been going on in the house both with dice and cards during his occupancy. Appellant engaged in these games, and people resorted there for gambling purposes in considerable numbers. The witness Smith testified that he played there over a dozen times, and that he played with appellant; that he had seen fifteen or twenty people there gambling at a time, shooting craps and playing cards; that some were playing pitty-pat, which is a game played with cards, and that they were betting on all these games; that appellant was present on all these occasions, and saw the gambling and himself engaged in it. The witness went into a detailed statement of the matters occurring in and around the place at the different times he was there, and he also testified that appellant's family lived there; that appellant had a wife and a little girl about seven or eight years of age. Another witness, Johnson, testified that he played cards and bet on the games at the house in question; that he did not remember the number of times he had been there; that he bet with appellant at the house. Another witness named Hill testified in the case that he had been there more than a dozen times, and there was gambling all the time when he was there, and that he and appellant were both in the game and bet money on the games. Some of the witnesses testified that the gambling was at night when they were there, and others testified they were there in the daytime and gambling was going on. Gilstrap testified that he had seen gambling there; that he had been at appellant's house until two o'clock and the parties were gambling and betting. Bowen testified that he was at appellant's house, and that he saw gambling going on there. This witness was there several times. Brown testified he was at appellant's house and he saw gambling going on there. In brief, the evidence shows that the gambling was going on generally and promiscuously at appellant's house during the five or six months he lived there, and that appellant engaged in these games and bet and played. It would seem from this testimony that appellant was keeping this house as a place for gambling where people went promiscuously and engaged in all sorts of gambling. As before stated, the indictment charges that appellant was the keeper of the house; that he permitted people to gamble in the house under his control, and that it was a common resort for gaming.

The statute, article 388b, of the Act of the Thirtieth Legislature, under which this indictment was framed, reads as follows:

"If any person shall rent to another or shall keep or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice, dominoes or to keep or exhibit for the purpose of

gaming, any bank, etc., or as a place where people resort to gamble, bet or wager, etc., or shall knowingly permit property or premises of which he is owner, or which is under his control to be so used, shall be guilty of a felony."

Our statute is broad enough to cover, it would seem, all imaginary cases where a house is used as a gaming-house. If appellant kept the house as a gambling-house or a gaming-house, then this case should be reversed. He was not convicted for keeping a gambling-house, but for knowingly permitting gambling in his house. Such is the charge of the court. The court selected out of the different allegations of the indictment this clause, and submitted that alone to the jury. As I understand the law, as applied to the facts herein, this charge submitted the wrong allegation of the indictment to the jury, and authorized a conviction of permitting gaming in his house when he should have been convicted, if at all, as a keeper of a gambling-house. If this proposition is correct, then the conviction is against both the law and the evidence. The evidence clearly, in my mind, shows appellant to be the keeper of a gaming-house or gambling-house. There is a statutory distinction between keeping a gaming-house and permitting gaming in a house owned or controlled by the accused or seems to be. If a party rents a house to another for the purpose of gaming, and the gambling is carried on in the house, the renter would be guilty under this statute, and the party who keeps the house would be guilty under that clause of the statute which charges him with violating the law if he keeps the house. If the owner of the house rents it to another, and the house is used for gaming purposes, when the renter did not rent it for that purpose, and he ascertains that his house is being so used, and he thereafter permits the gambling to go on, he would be guilty of permitting his property or premises to be so used. But in that case the renter would be guilty of keeping a gaming-house; he would be in charge and control of the house himself. It would be his premises by reason of his rental contract; he would be in possession. This case comes within that clause of the statute. In a sense, every man who keeps a gaming-house is permitting parties to play in the house, if in fact they do play there, but the statute in regard to permitting gaming in houses has no reference to this condition of affairs, for, under those circumstances, the man would be a keeper. The statute having defined these different modes by which the law may be violated, has thereby required the pleader to select that clause of it which has been violated and so charge, and the evidence must support the allegation. The pleader may charge all of them conjunctively, 'but where the court selects that clause upon which the conviction shall be predicated by the verdict of the jury, he must select that clause in the indictment which justifies a conviction under the facts. He can not take the facts applicable to one phase of the statute and authorize a conviction under another clause of the statute, under the simple funda-

mental rule that the allegations and the proof must correspond. One of the questions made by appellant is that the conviction was against the law and the evidence. If the facts made him a keeper, then the law is that he should be convicted for that violation of the statute. Now, was appellant a keeper of the house under this statute? If so, it could only be by reason of the fact that it' was a common resort. That he kept or controlled the house is unquestioned. Mr. Webster defines a keeper to be "one who has the care, custody or superintendence of anything." The word "keeper" does not necessarily imply either the ownership or the right to participate in the profits of the thing kept. Stevens v. People, 67 Ill., 587. The occupant of a house commonly resorted to for gambling is a keeper within the meaning of the statute prohibiting the keeping of such house or houses, even though there is nothing to show an actual hiring or paying of the rent by him. P. C., art. 388f. If the circumstances exist to satisfy the jury that the room was actually occupied and used for the alleged unlawful purpose, it is to be considered within the intent of the law. Commonwealth v. Hyde (Mass.); Thatcher Crim. Cas., 19-23. The *keeper* of a gaming device is one who has management of the device when used for gaming purposes, or when set up with a view to attract people to bet their money on it. McCoy v. Zane, 65 Mo., 11. The word "keeper" of a barroom is synonymous with the word "dealer" and means the same thing where the party is charged with being a dealer or keeper of a barroom. Hofheintz v. State, 45 Texas Crim. Rep., 117. So it was held in this State that .the *keeper* of a disorderly house under our statute means the *proprietor.* Moore v. State, 4 Texas Crim. App., 127. Again, it was held in Ohio that the word "keeper" is defined to be one who has the care, custody or superintendence of anything, as the keeper of a park. ,Schultz v. State, 32 Ohio St., 276-281. Again, in North Dakota it was held, "A keeper is one who has the care, custody or superintendence or anything. When a husband lives in a house and exercises acts of control and management, he is the keeper, notwithstanding the wife may own the building and carry on the business therein and receive all the profits. State v. Rozum, 8 North Dakota, 548." Tested by these definitions and decisions, to me the conclusion is irresistible that appellant was the keeper of the house that he had rented, and in which he lived, and of which he had the control. He rented it, occupied it, lived in it, and when he permitted all this gambling to go on, as the State has shown did take place, he certainly was the *keeper* of that house. The statute under consideration did not refer to this character of case when it spoke of permitting gambling, otherwise the *keeper of a house* is. the same *as one who permits,* and this would render the law incongruous, worse than duplicitous, and to my mind nonsensical.

As I view this record, appellant controlled the house, occupied it, used it, and had these people to gamble, and, therefore, under all the

decisions would be a *keeper.* So as I understand this record, appellant is guilty of one offense and he has been convicted of another offense; that he was charged with both, and the court submitted that phase of the law which was not justified or authorized by the facts. The evidence, therefore, does not sustain the verdict.

2. Appellant claims that the conviction is against the law. It is evident, if what has been said is correct, that the conviction was against both the evidence and the law. If appellant has been shown to be a *keeper* of the house, and has been convicted for *permitting* gambling in the house, it would be a clear variance between the facts, the charge of the court and submitted allegation in the indictment. That it is against the law, to my mind, is clear, and one of the serious questions, if not the most serious, presented by this contention of appellant is, that by the Act of the Thirty-first Legislature, page 111, the *keeper* of a gambling house is a *vagrant.* Subdivision K of that Act declares that "every *keeper* of a house of gambling or gaming" shall be punished as a *vagrant.* The punishment affixed to this denunciation of the law makes it a misdemeanor, being a fine of two hundred dollars. Now, under this language of the vagrant Act, it is clear that appellant did keep a house of gambling and a place for gaming. If the State's evidence is to be accredited at all, then appellant had crowds there to gamble and carried on gambling transactions generally for a long period of time; that the parties were gaming, and gaming at this house, and that they were there in considerable numbers is made patent by the State's case. If the evidence for the State is not true, then the State has no case. If it is true, then appellant's house was one of gambling, kept by him for gaming purposes. An inspection of the two Acts of the Legislature, that of the Thirtieth, on page 107, and that of the Thirty-first, page 111, shows that the Acts and charge proved against appellant make two distinct and different violations of the law provable by the same facts, keeping a gambling-house and vagrancy. The language of one is if a person shall keep or be in any manner interested in keeping any premises, etc., and the other is that all keepers of a house of gambling or for gaming shall be punishable. It would, therefore, seem all sufficiently plain that the Act of the Thirtieth Legislature and the Act of the Thirty-first Legislature refer to and define and punish the same acts with different penalties. Then it would be found that these two Acts are irreconcilably in conflict so far as punishment is concerned. They must either both fall or the later Act must be held to supplant or take the place of the former. In Fleeks v. State, 47 Texas Crim. Rep., 327, it was held that a later statute covering the same acts and prescribing a different punishment repeals a former statute on the same subject by implication. We might rest, as a correct proposition, our conclusion upon a repeal by implication inasmuch as the two Acts are in direct conflict, the latter punishing as a misdemeanor what had theretofore been punished as a felony, but

it is not necessary to rest our conclusion here on this proposition, because the Act of the Thirty-first Legislature expressly repeals all laws and parts of laws in conflict with it. The language employed in section 6 of the Act of the Thirty-first Legislature is as follows: "All laws and parts of laws in conflict herewith are hereby repealed." See also Smith v. State, 44 Texas, 443; Robinson v. State, 2 Texas Crim. App., 390; Harold v. State, 16 Texas Crim. App., 157; Gardenhire v. State, 18 Texas Crim. App., 565; Daniels v. State, 150 Ind., 348; State v. McKee, 104 S. W. Rep., 486.

Where the same Act is made both a felony and a misdemeanor by different statutes, both statutes can not stand and be enforced, but the one last passed by the Legislature will be held to repeal the former. This proposition is one of universal application and does not need authorities to support it.

Another proposition may be thus stated, that is to say, that where a violation of the law occurs under the former statute, and the prosecution is brought under that statute, but is tried after the second Act has been passed, the second being inconsistent with the former, and which operates as a repeal, the prosecution must be abated.

This prosecution was begun before the Act of the Thirty-first Legislature went into effect. Another proposition may be stated after this manner: If the law is repealed, no further proceeding can be taken under the repealed law to enforce the punishment, and this applies as well when the repeal takes effect after the removal of a case to the Appellate Court, as it does before such removal, unless there be a saving clause. Sheppard v. State, 1 Texas Crim. App., 522-524; Hubbard v. State, 2 Texas Crim. App., 506; Tuton v. State, 4 Texas Crim. App., 472; Kenyon v. State, 31 Texas Crim. Rep., 13; Sutherland on Statutory Construction, 166. See also Mulkey v. State, 16 Texas Crim. App., 53; Prather v. State, 14 Texas Crim. App., 453.

Mr. Sutherland, in his work on Statutory Construction, thus states the rule: "The repeal or expiration of a statute imposing a penalty or forfeiture will prevent any prosecution, trial or judgment for any offense committed against it while it was in force, unless the contrary be provided in the same or some other existing statute. Where a penal statute is modified as to exempt a class from its operation, violations of such exempted class before such modification took effect can not be prosecuted afterwards. If a penal statute is repealed pending an appeal and before the final action of the Appellate Court, it will prevent an affirmance of a conviction, and the prosecution must be dismissed or the judgment reversed. A final judgment before repeal is not affected by it. The repeal operates as a pardon of all offenses against it, and a bar to any subsequent prosecution. There can be no legal conviction for an offense unless the act be contrary to law at the time it is committed; nor can there be judgment unless the law is in force at the time of the indictment and

judgment." In the footnotes Mr. Sutherland cites a great many authorities in support of the above quotation. Both in law and in fact, as a rule of right, it ought not to be otherwise held. Two inconsistent laws upon the same subject can not exist, nor can two laws punishing the same act in different ways with different punishments be permitted to stand. The law in regard to punishment of the citizenship of this State must be definite, and where there are two penalties of different magnitudes covering the same act, the law is not definite, accurate or certain. The law itself must carve out the acts which are punishable, and not leave it to the discretion or choice of the prosecution or of courts; that is only within legislative authority.

That gambling-house and gaming-house, under the two Acts under discussion, mean the same thing and prescribe different punishments for the same act or acts, is patent by the language employed in the two statutes. Article 388f of the Act of 1907 thus defines the terms: "Gambling-house and gaming-house as used in this Act is meant any place where people resort for the purpose of gaming, betting or wagering." Under article 388b of said Act a party convicted for its violation is punished by confinement in the penitentiary. Under the second Act, or that of 1909, the "keeper of such gambling-house or gaming-house" is punished by a fine of two hundred dollars. It would follow from the above definition that every person who keeps a gambling resort is necessarily a keeper of a gambling-house or gaming-house under the definition given by the Legislature above quoted.

The evidence in the record shows that appellant kept such a resort. If the fact that a great many people went to his house with his consent and gambled, and did so during the space of six months, this would evidently constitute a resort for such gambling, if a private residence can be construed to be within the terms of article 388b.

The vagrancy Act, or that of 1909, section 1, subdivision K, denounces as a vagrant "every keeper of a house of gambling or gaming." Under all conceivable construction, interpretation or definitions known to our jurisprudence a keeper of such a house means the same thing, and applies with equal cogency to both Acts of the Legislature. This conclusion would seem to be irresistible. Gambling-house and gaming-house, under the two Acts of the Legislature, must necessarily mean the same thing, because the Legislature has defined what those terms mean. See Code of Criminal Procedure, articles 58 and 59.

Under article 58, supra, words and phrases used in our Codes are to be taken and understood in their usual acceptation in common language, except where their meaning has been particularly defined by law. And by the terms of article 59, supra, this applies to both Codes, penal and procedure.

It would then seem to be not a debatable question that "gambling-house and gaming-house" have been particularly defined by the Leg-

islature, and it is not to be questioned that this court would be governed by that definition. Then the conclusion would be irresistible that "gambling-house and gaming-house" mean the same thing under both Acts of the Legislature, and are covered by and included in the same definition under both statutes. The language is plain and unambiguous and needs no refined rules of technical construction to be readily comprehended. If the Constitution is to be maintained, then it is too clear for discussion that a citizen can not be twice tried for the same offense. If gambling-house and gaming-house mean the same thing under the two statutes, then if both are upheld, a citizen may be twice tried and convicted for the same offense and for the same act or acts, for under both Acts the man who controls a gaming-house or gambling-house is necessarily the keeper. The Bill of Rights, section 14, especially inhibits two convictions for the same offense. This court and the Legislature are powerless to hold otherwise. It is, therefore, beyond cavil that the latter Act must prevail, or that both must fail.

In conclusion, I wish to say that I am only discussing subdivision K of section 1 of the Act of 1909, and its relation to the Act of 1907. I am not discussing the vagrancy Act in its entirety, but I am fully convinced that said subdivision K, supra, is in direct conflict with article 388b as to keepers of gambling-houses, and repeals to that extent.

To find a distinction or difference between the two Acts would require the most refined subtle reasoning along the line of the most acutely technical rules of construction. One is so much like the other, the definitions are so nearly identical, that it is fully and sufficiently persuasive to any mind—legal or lay—that the party who is sought to be punished would, if punished under both, be so punished for identically the same act, fact or facts. To my mind the meaning of the two is the same, and that they are the same is self-evident, and that the definitions under the two Acts are identically the same thing.

This much I say at the risk of prolixity, because I believe the importance of the question requires it.

-- There is another phase of the repealing clause of the Act of the Thirty-first Legislature which may be mentioned. The entire section 6 of said Act reads as follows: "All laws and parts of laws in conflict herewith are hereby repealed; provided the penalties herein named shall be cumulative, and a conviction for any of the offenses herein named shall not be a bar to any other prosecution under any other criminal statute." This section is absolutely incompatible and incongruous within itself. The Legislature can not repeal all laws in conflict with a law and yet at the same time make the Acts under the repealed statute cumulative of the repealing statute. Nor can the Legislature provide that where a man has once been convicted of a violation of the law, he may be prosecuted again under another statute for the same character of offense or the same act. That body

would have as much authority to provide that he could be punished the second time under the same statute for the same act as it would have to prescribe that he may be punished for the same act with a different punishment under another statute. The Bill of Rights has settled this question beyond cavil by providing that a party can not twice be put in jeopardy for the same offense; he can not be tried again. I deem it unnecessary here to discuss what is termed an offense. Both Acts define an offense.

I can not, therefore, agree with my brethren in the disposition of the case either as to the force of the facts or the law of the case, and am of opinion that *subdivision K* of the Act of the Thirty-first Legislature, page 111, is in direct conflict with the Act of the Thirtieth Legislature, page 107, known as article 388b, that the two Acts denounce different punishments for the same identical facts, and this being true, the later Act repeals the former, not only by implication, but by express provisions of the latter Act. I am only here discussing the conflict that arises between the two Acts as above mentioned, to wit: the conflict with reference to subdivision K of the vagrant Act in the statute of the Thirty-first Legislature.

I therefore respectfully yet earnestly enter this my dissent.